70 F.3d 114
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Yang Cheng HUAN, Plaintiff-Appellant,
v.
William J. CARROLL, District Director of the United States
Immigration and Naturalization Service, Washington District;
David L. Milhollan, Director of the Executive Office for
Immigration Review and Chairman of the Board of Immigration
Appeals, Defendants-Appellees.
 No. 94-1984.
 United States Court of Appeals, Fourth Circuit.
 Submitted June 20, 1995.
Decided Nov. 16, 1995.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T.S. Ellis, III, District Judge. (CA-93-1411)
 E. Leslie Hoffman, PETTIT & MARTIN, Washington, D.C., Mark G. Pedretti, Winthrop, Stimson, Putnam & Roberts, New York City, for Appellant. Frank W. Hunger, Assistant Attorney General, Lauri Steven Filppu, Kristin A. Cabral, David M. McConnell, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.
 E.D.Va.
 AFFIRMED.
 Before WIDENER, NIEMEYER, and LUTTIG, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Yang Cheng Huan ("Yang") appeals the district court's denial of his petition for habeas relief in which he sought judicial review of the Board of Immigration Appeals' ("the Board") decision denying asylum.
 
 
 2
 Yang, a citizen of the People's Republic of China ("PRC"), was one of several hundred illegal immigrants aboard a ship that ran aground 100 yards from the shores of a New York harbor. Yang was rescued before reaching the shore and was brought before the Immigration and Naturalization Service ("INS") for exclusion proceedings. Yang was charged with attempting to enter the United States without a proper visa, in violation of section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("the Act"), as amended, 8 U.S.C.A. Sec. 1182(a)(7)(A)(i)(I) (West 1970 & Supp.1995). The Immigration Judge ("IJ") found Yang excludable after Yang admitted that he was born in China, that his parents were citizens of China, and that he did not have the proper documents that would have allowed him to legally enter the United States.
 
 
 3
 Yang applied for asylum, fearing that if returned to the PRC, he would be prosecuted and jailed for assaulting a family planning official. The PRC imposed a fine against Yang and his wife following the birth of their second child for violating the country's "one couple-one child" family planning policy. Yang testified that he was unable to pay the fine and refused to allow his wife to be sterilized. Local gov ernment officials reportedly abducted Yang's wife and sterilized her against her will. Yang was angered by these actions and rushed to the hospital, where he confronted one of the officials. Yang assaulted this official and broke his glasses. Fearing prosecution for the assault and for his noncompliance with the PRC's family planning policy, Yang and his family fled to a neighboring village. Yang decided to leave the PRC after realizing that he could not remain in the neighboring village without registering, which he could not do without the consent of the officials who were searching for him to prosecute him for assault.
 
 
 4
 The IJ found Yang's testimony to be credible, but concluded that he was not eligible for asylum based upon Matter of Chang, Interim Decision 3107 (BIA 1989), and upon Yang's testimony. Yang did not show that the PRC's coercive population control policies, including the forced sterilization of his wife, were applied especially against him or his family. Further, prior to Yang's departure, Yang's brother paid the fine for Yang's violation of the "one couple-one child" policy, which brought him into compliance with their policies. Consequently, the IJ reasoned that Yang's motivation for leaving the PRC was actually fear of prosecution for assaulting a government official, and not fear of persecution for violating the policies.
 
 
 5
 The Board affirmed the IJ's decision, noting that Yang, through his counsel, only appealed that portion of the IJ's order directing Yang to be excluded and deported from the United States. The Board cited Matter of Chang as controlling precedent, and held that its interpretation of the asylum statute therein was both legally correct and consistent with prior United States Supreme Court decisions.
 
 
 6
 Yang sought judicial review of the Board's decision by filing a petition for habeas relief. Yang v. Carroll, 852 F.Supp. 460, 462 (E.D.Va.1994). The district court determined that Yang's well-founded fear of returning to the PRC was due to the likelihood that he faced criminal prosecution for attacking a government official, rather than due to persecution from the government due to Yang's membership in a protected class, as is required by the asylum statute, and dismissed his petition. Yang, 852 F.Supp. at 468.
 
 
 7
 Our recent decision in Chen Zhou Chai v. Carroll, 48 F.3d 1331 (4th Cir.1995), is dispositive of this appeal. To be eligible for asylum under the Immigration and Nationality Act, an alien must meet the statutory definition of a refugee. 8 U.S.C. Sec. 1158(a) (1988). A refugee is any person who is unable or unwilling to return to his or her country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C.A. Sec. 1101(a)(42)(A) (West 1970 & Supp.1995). Asylum may be based on the alien's past persecution or a well-founded fear of future persecution. 8 C.F.R. Sec. 208.13(b) (1995).
 
 
 8
 In Matter of Chang, the Board interpreted the asylum statute and held that severe government sanctions for an asylum applicant's violations of his native country's population control policy does not necessarily constitute persecution due to political opinion. Matter of Chang, Int. Dec. 3107 at 10-11. The applicant must demonstrate that any government action taken against the applicant was for a reason other than mere enforcement of its population control policies. Id.
 
 
 9
 Affording deference to the Board's interpretation of the asylum statute in Matter of Chang, we recognized that the Board has consistently applied Matter of Chang to claims for asylum based on the PRC's coercive population control practices, and that despite previous attempts to overturn its rule, Matter of Chang remains the Board's controlling precedent. Chen, 48 F.3d at 1342. Thus, to establish entitlement to asylum, the applicant must demonstrate that any action taken by the PRC against him "arises for a reason other than general population control." Matter of Chang, Int. Dec. 3107 at 11. The Board's interpretation of the asylum statute in Matter of Chang was not unreasonable and was consistent with the Supreme Court's decision in INS v. Elias-Zacarias, 502 U.S. 478 (1992).
 
 
 10
 We review de novo both the district court's denial of Yang's petition for habeas relief, and the Board's conclusion that Yang failed to meet the requirements of asylum eligibility. Chen, 48 F.3d at 1338; Sotelo-Aquije v. Slattery, 17 F.3d 33, 35 (2d Cir.1994). However, the Board's factual findings may not be reversed unless the evidence not only supported a contrary conclusion, but compelled it. INS v. Elias-Zacarias, 502 U.S. at 481 & n. 1; Huaman-Cornelio v. Board of Immigration Appeals, 979 F.2d 995, 999 (4th Cir.1992). To obtain a judicial reversal of the Board's determination of ineligibility for asylum, Yang must have shown "that the evidence he presented was so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." Elias-Zacarias, 502 U.S. at 483-84.
 
 
 11
 We find that Yang failed to present such compelling evidence. In fact, substantial evidence from the record as a whole supports the Board's conclusion that Yang's genuine, well-founded fear of returning to the PRC was because of the possibility of pending criminal prosecution, and not of persecution for being a member of a protected group, as is required to establish eligibility for asylum. Yang did not prove, nor does the record disclose, that the "PRC selectively enforced its population control policy against [him] because of his ... race, religion, nationality, membership in a particular social group, or political opinion." Chen, 48 F.3d at 1336 (citing Matter of Chang, Int. Dec. 3107 at 11).
 
 
 12
 In sum, Yang failed to prove that he was unable or unwilling to return to the PRC "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion;" therefore, he failed to meet the threshold eligibility requirements for asylum. 8 U.S.C.A. Sec. 1101(a)(42)(A) (West 1970 & Supp.1995); see 8 U.S.C. Sec. 1158(a) (1988). We therefore uphold the Board's denial of asylum to Yang and affirm the district court's denial of Yang's petition for habeas relief. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 AFFIRMED